1  REALLAW, APC
   MICHAEL J. HASSEN (Bar No. 124823)
2  mjhassen@reallaw.us
   1981 N. Broadway, Suite 280
3  Walnut Creek, CA 94596
   Telephone: (925) 359-7500
4  Facsimile: (925) 557-7690

5  Attorneys for Plaintiffs AIIRAM LLC and
   MARIIA KRAVCHUK, individually and on
6  behalf of all others similarly situated

*Reallaw*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| AIIRAM LLC and MARIIA KRAVCHUK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KB HOME, a Delaware corporation, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No. 5:19-cv-00269-LHK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) BREACH OF THE IMPLIED COVENANT OF FAIR DEALING;**<br><br>**(3) INTENTIONAL INTERFERENCE OF ECONOMIC ADVANTAGE;**<br><br>**(4) NEGLIGENCE INTEREFERENCE OF ECONOMIC ADVANTAGE; AND**<br><br>**(5) BAD FAITH DENIAL OF CONTRACT**<br><br>**(6) VIOLATION OF THE "UNFAIR" PRONG OF THE UCL**<br><br>**(7) VIOLATION OF THE "FRAUDULENT" PRONG OF THE UCL**<br><br>**(8) VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Ctrm.:  8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

Plaintiffs AIIRAM LLC and MARIIA KRAVCHUK, individually and on behalf of all others similarly situated, complain and allege against defendant KB HOME as follows:

**JURISDICTION AND VENUE**

1. This class action originally was filed in State Court pursuant to Code of Civil Procedure section 382. Defendant removed the lawsuit to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) ("CAFA").

2. This Court has personal jurisdiction over Defendant KB Home because it is a citizen of California, headquartered in Los Angeles, and does business in this federal district.

3. Venue is proper in this Court because Defendant employs persons in this federal district, because Plaintiffs transacted business underlying the allegations of this Complaint in this federal district, and because the State Court from which this lawsuit was removed was properly venued in Santa Clara County pursuant to California Code of Civil Procedure Section 395.

**PARTIES**

4. Plaintiff Mariia Kravchuk is an individual residing in Ukraine.

5. Plaintiff AIIRAM LLC is a Nevada limited liability company of which Plaintiff Mariia Kravchuk is the sole owner.

6. According to its Securities and Exchange Commission Form 10-K for fiscal year ending November 30, 2017, Defendant KB Home is a Delaware corporation with its principal place of business at 10990 Wilshire Boulevard, Los Angeles, California 90024.

7. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as Does 1-10, inclusive ("Doe Defendants"), and therefore sue these Doe Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of said Doe Defendants when ascertained. Plaintiffs are informed and believe that at all relevant times mentioned herein, each of the fictitiously-named Doe Defendants conducted business in Santa Clara County, California, and is culpable or responsible in some manner and/or conspired with one or more of the other Defendants for the conduct, acts, omissions, occurrences, injuries, and damages herein alleged, and that Plaintiffs' injuries and damages were directly and proximately caused thereby.

**CLASS ACTION ALLEGATIONS**

8. Plaintiffs bring this lawsuit on her own behalf, as well as on behalf of each and every other person similarly situated, and thus seeks class certification under Rule 23 of the Federal Rules of Civil Procedure.

9. The claims alleged herein arise from a breach of contract. As a matter of law, such claims are suitable for nationwide class action treatment. The only real legal issue pertinent to the breach of contract claims is the definition of "breach," which does not differ from state to state. As one Court held, "Whether [a] contract[ ] ... has been breached is a pure and simple question of contract interpretation which should not vary from state to state." (*Indianer v. Franklin Life Ins. Co.* (S.D.Fla.1986) 113 F.R.D. 595, 607, overruled in part on other grounds by *Ericsson GE Mobile Communs., Inc. v. Motorola Communs. & Elecs., Inc.* (11th Cir. 1997) 120 F.3d 216, 219 fn. 12; *accord Leszczynski v. Allianz Ins.* (S.D. Fla. 1997) 176 F.R.D. 659, 672.) Put another way, "The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform." (*Kleiner v. First Nat'l Bank of Atlanta* (N.D.Ga.1983) 97 F.R.D. 683, 694.) Or in the words of the Eleventh Circuit, "A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey. See Black's Law Dictionary 200 (8th ed. 2004) (defining "breach of contract" as "[v]iolation of a contractual obligation by failing to perform one's own promise"). (*Klay v. Humana, Inc.* (11th Cir. 2004) 382 F.3d 1241, 1263.)

10. Plaintiffs' proposed class consists of and is defined as follows:

> *Nationwide Class:* All persons who entered into a contract with Defendant for the purchase of real property that contained a three-day "right to cure" provision, but whose contracts were terminated on less than three days' notice or who purchased the real property in question at a higher price than originally required under notice or threat that the contract would be terminated on less than three days' notice.

*California Subclass:* All persons who entered into a contract with Defendant for the purchase of real property located in the State of California that contained a three-day "right to cure" provision, but whose contracts were terminated on less than three days' notice or who purchased the real property in question at a higher price than originally required under notice or threat that the contract would be terminated on less than three days' notice.

11. Members of the Nationwide Class and California Subclass are referred to herein as "class members." Plaintiffs reserve the right to redefine the Nationwide Class and to add additional subclasses as appropriate, based upon further investigation, discovery, and specific theories of liability.

12. There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including but not limited to:

   a. Whether Defendant properly calculated the three day "right to cure" period under the contract;

   b. Whether Defendant intentionally failed to provide class members with three days to cure as provided for under the contract;

   c. Whether Defendant failed to provide class members with three days to cure as part of a corporate effort to realize a greater profit from the sale of the real property at issue;

   d. Whether Defendant's employees failed to provide class members with three days to cure in order to realize a greater profit, personally and/or on behalf of the company, from the sale of the real property at issue; and

   e. Whether Defendant previously had been placed on notice of the fact that it was miscalculating the three-day right to cure period.

13. The identity of the class members is readily ascertainable from Defendant's records.

14. There is a well-defined community of interest in the lawsuit as follows:

a. <u>Numerosity</u>: The sizes of the Nationwide Class and California Subclass are so numerous that joinder of all members would be neither feasible nor practical. The memberships of the Nationwide Class and California Subclass are unknown to Plaintiffs at this time, but they are estimated to be greater than 100 individuals and are readily identifiable by inspection of Defendant's business records which will identify who received three day notices and the date such notices would expire, when Defendant canceled the class member's purchase contract, and/or how much the class members ultimately paid to purchase the real property at issue.

b. <u>Commonality and Typicality</u>: Plaintiffs' claims and defenses, if any, are typical of those of other class members, and the claims of all class members turn on the resolution of common questions concerning Defendant's failure to afford class members the full three days right to cure as allowed under the contracts.

c. <u>Adequacy</u>: Plaintiffs are qualified to, and will, fairly and adequately protect the interests of each class member with whom they have a well-defined community of interest and with whom they share common and typical claims. Plaintiffs' attorney – the proposed class counsel – is well-versed in the rules governing class action discovery, certification and settlement.

d. <u>Superiority</u>: The nature of this lawsuit makes the use of the class action device superior to other methods of adjudication. A class action will achieve economies of time, effort and expense – both for the parties and for the courts – as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

**GENERAL ALLEGATIONS**

15. On or about July 26, 2017, Plaintiff Kravchuk and an individual named Artem Koshkalda electronically signed a Purchase Agreement and Escrow instructions with Defendant

1  for Tract 10377, Lot/Unit 8, at 1035 Giacomo Lane #7, San Jose, California 95130, for a total
2  purchase price of $943,367.00 (hereafter the "Lot 8 Contract"). Plaintiffs are informed and believe
3  that Defendant KB Home South Bay Inc. executed the Lot 8 Contract on or about August 3, 2017.
4  On or about August 4, 2017, $27,240 was deposited into escrow for the purchase of Lot 8. The Lot
5  8 Contract set forth an estimated closing date of November 27, 2017.

6        16.     Plaintiffs are informed and believe that on or about July 27, 2017, Artem
7  Koshkalda and an individual named Vladimir Westbrook electronically signed a Purchase
8  Agreement and Escrow instructions with Defendant for Tract 10377, Lot/Unit 11, at 1035
9  Giacomo Lane #4, San Jose, California 95130, for a total purchase price of $876,427.00 (hereafter
10 the "Lot 11 Contract"), and that Defendant KB Home South Bay Inc. executed the Lot 11 Contract
11 on or about August 4, 2017. On or about August 4, 2017, $25,440 was deposited into escrow for
12 the purchase of Lot 11. The Lot 11 Contract set forth an estimated closing date of November 30,
13 2017.

14       17.     On or about July 28, 2017, AIIRAM LLC, through its sole owner Plaintiff
15 Kravchuk, electronically signed a Purchase Agreement and Escrow instructions with Defendant
16 for Tract 10377, Lot/Unit 14, at 1035 Giacomo Lane #1, San Jose, California 95130, for a total
17 purchase price of $932,028.00 (hereafter the "Lot 14 Contract"). Plaintiffs are informed and
18 believe that Defendant KB Home South Bay Inc. executed the Lot 14 Contract on or about August
19 3, 2017. On or about August 4, 2017, $27,240 was deposited into escrow for the purchase of Lot
20 14. The Lot 14 Contract set forth an estimated closing date of November 30, 2017.  Lot 8, Lot 11
21 and Lot 14 are hereafter collectively referred to as the "Properties."

22       18.     Plaintiffs are informed and believe that on November 9, 2017, Westbrook,
23 individually for Lot 11 and as real estate agent for the purchasers of Lot 8 and Lot 14, performed a
24 pre-carpet walk-through of the Properties to visually inspect the homes and to identify items that
25 needed to be corrected.

26       19.     Plaintiffs are informed and believe that on November 20, 2017, Defendant was
27 provided with the contact information for the lender on the purchases of the Properties, and that
28

1  Defendant – directly or through its sales team – provided the lender with all necessary
2  documentation to close escrow on the Properties.

3  20. Plaintiffs are informed and believe that on November 27, 2017, Westbrook,
4  individually for Lot 11 and as real estate agent for the purchasers of Lot 8 and Lot 14, performed a
5  final walk-through of the Properties to visually inspect the homes and to ensure that the items
6  previously identified had been corrected.

7  21. Plaintiffs are informed and believe that on November 27, 2017, Defendant sent an
8  email to Koshkalda stating that November 30, 2017 was "the end of our fiscal year" and that it
9  was "imperative" that escrows on the Properties close by that date. Defendant's email also stated,
10 "Your 3 day default letter will go out today and you will receive [it] tomorrow. The cure to the
11 default is to close by 11/30/17 or we will refund your deposit and cancel the purchase."

12 22. On November 27, 2017, Defendant sent by Golden State Overnight a notice of
13 default under section 3.2 of the Lot 8 Contract and expressly stating in pertinent part:

> Be advised that section 3.2 allows you to continue with the purchase
> of your home if you are able to deposit all funds into escrow within
> 3 business days of <u>delivery</u> of this letter and you provide KB Home
> a copy of your final loan approval (as opposed to preliminary loan
> qualification). (Emphasis in original.)

17 23. Section 3.2.2 of the Lot 8 Contract provides in pertinent part:

> … if Buyer …. places all funds into escrow necessary to purchase
> the Property no later than three (3) business days after the delivery
> of Seller's notice to terminate the Agreement pursuant to this
> Section 3.2.2, the Loan approval condition shall be deemed satisfied
> and the Agreement shall not terminate….

21 24. On or about November 28, 2017, all rights to purchase the Properties under the Lot
22 8 Contract, the Lot 11 Contract and the Lot 14 Contract were assigned to AIIRAM LLC.

23 25. Plaintiffs' loans were approved prior to November 30, 2017, and Plaintiff
24 Kravchuk made arrangements to fly into California on November 30 to sign the escrow papers and
25 to deposit the balance of the funds required to purchase the Properties.

26 26. Plaintiff Kravchuk flew to California on November 30, 2017, and went to First
27 American Title, which was handling the escrow, to sign the final paperwork. Plaintiffs were
28 advised by the escrow officer that the final paperwork had to be corrected. While escrow worked

*Reallaw*

1 on correcting the closing papers, Plaintiffs went to the bank to obtain cashier's checks for the
2 purchase of the Properties.

3  27.  While Plaintiffs were at the bank, the escrow officer spoke with Plaintiff Kravchuk
4 by phone and advised her that "there is no point to get the checks because the contracts were
5 canceled by KB Home." Thus, even though on November 30, 2017, Plaintiffs' lender and
6 Plaintiffs were ready, willing and able to transfer all funds necessary into escrow to purchase the
7 Properties, and even though the escrow officer confirmed that if the funds were deposited into
8 escrow on November 30 then escrow would close on December 1, 2017, KB Home had instructed
9 the escrow company not to allow Plaintiffs to sign the closing documents and to cancel the
10 purchase agreements.

11  28.  That evening, on November 30, 2017 at approximately 7 p.m., only two hours after
12 instructing escrow not to allow Plaintiffs to sign the closing papers and to cancel the escrows,
13 Defendant left a voicemail for Westbrook as the real estate agent for Plaintiffs advising him that
14 the Properties were available for purchase at "market prices".

15  29.  Plaintiffs are informed and believe that Defendant's then-market prices for the
16 Properties were as follows: Lot 8 – $1,166,669; Lot 11 – $1,095,760; Lot 14 – $1,155,448. Thus,
17 Defendant demanded a total of $3,417,877.00 to purchase the three properties in question. As of
18 April 27, 2018, based on Defendant's price list for the Properties, the market prices for the
19 Properties had increased as follows: Lot 8 – $1,408,839; Lot 11 – $1,331,690; Lot 14 –
20 $1,408,839.  Thus, the market prices for the Properties had increased to a total of $4,149,368. The
21 purchase prices under Plaintiffs' contracts with Defendant totaled $2,751,822.00.

## FIRST CAUSE OF ACTION

### [BREACH OF CONTRACT]

24  30.  Plaintiffs incorporate paragraphs 1 through 29 as though set forth herein.
25  31.  Plaintiffs and Nationwide class members entered into written contracts with
26 Defendant (hereafter collectively, the "Contracts").

32. Plaintiffs and Nationwide class members performed all terms that they were obligated to perform under the Contracts, and were ready, willing and able to close escrow on the purchase of their respective real properties.

33. Defendant breached the Contracts by refusing to allow Plaintiffs and Nationwide class members to close escrow on the purchase of the real properties within 3 business days of delivery of Defendant's 3-day default letters.

34. As a direct and proximate cause of Defendant's breach of the Contracts, Plaintiffs and Nationwide class members have suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### [BREACH OF CONTRACT OF THE IMPLIED COVENANT OF FAIR DEALING]

35. Plaintiffs incorporate paragraphs 1 through 34 as though set forth herein.

36. Defendant entered into the Contracts with Plaintiffs and California subclass members for the purchase of the real properties.

37. California law implies into every contract or agreement an implied covenant of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

38. Pursuant to the implied covenant of good faith and fair dealing, Defendant had the duty and responsibility to act fairly and in good faith toward Plaintiffs and California subclass members. Defendant breached this duty and acted in bad faith toward Plaintiffs and California subclass members.

39. Defendant breached the implied covenant of good faith and fair dealing by refusing to allow Plaintiffs and California subclass members to close escrow for the purchase of the real properties within 3 business days of the delivery of the 3-day default letters, as required by the Contracts.

40. Plaintiffs and California subclass members did all or substantially all of the significant things that the Contracts required them to do or they were excused from having to do those things; all conditions required for Defendant's performance occurred; Defendant unfairly

interfered with Plaintiffs' and California subclass members' rights to receive the benefits of the Contracts; and Plaintiffs and California subclass members were harmed by Defendant's conduct.

41.   Plaintiffs and California subclass members have suffered damages in an amount to be proven at trial.

42.   Plaintiffs and California subclass members are entitled to an award of attorney fees.

43.   Defendant acted with malice and oppression and with a conscious disregard of Plaintiffs' and California subclass members' rights, making them liable for punitive damages under Civil Code § 3294.

## THIRD CAUSE OF ACTION
### [INTENTIONAL INTERFERENCE OF ECONOMIC ADVANTAGE]

44.   Plaintiffs incorporate paragraphs 1 through 43 as though set forth herein.

45.   Following the execution of the Contracts, Plaintiffs and Nationwide class members had economic interests in the real properties that they were in contract to purchase. These interests: (1) had the probability of future economic benefit to Plaintiffs and Nationwide class members; (2) Defendant knew of these interests; (3) Defendant intentionally disrupted the interests and/or refused to allow Plaintiffs and Nationwide class members to close escrow on the purchase of the real properties so that Plaintiffs and Nationwide class members could realize the economic benefits of these interests; (4) there was actual interference with Plaintiffs' and Nationwide class members' interests in the real properties; and (5) there was economic harm to Plaintiffs and Nationwide class members proximately caused by Defendant's acts.

46.   Plaintiffs and Nationwide class members have suffered damages in an amount to be proven at trial.

47.   Defendant acted with malice and oppression and with a conscious disregard of Plaintiffs' and Nationwide class members' rights, making them liable for punitive damages under Civil Code § 3294.

## FOURTH CAUSE OF ACTION
### [NEGLIGENCE INTEREFERENCE OF ECONOMIC ADVANTAGE]

48.   Plaintiffs incorporate paragraphs 1 through 47 as though set forth herein.

49.     Following the execution of the Contracts, Plaintiffs and Nationwide class members had economic interests in the real properties that they were in contract to purchase. These interests: (1) had the probability of future economic benefit to Plaintiffs and Nationwide class members; (2) Defendant knew of these interests; (3) Defendant negligently disrupted the interests and/or refused to allow Plaintiffs and Nationwide class members to close escrow on the purchase of the real properties so that Plaintiffs and Nationwide class members could realize the economic benefits of these interests; (4) there was actual interference with Plaintiffs' and Nationwide class members' interests in the real properties; and (5) there was economic harm to Plaintiffs and Nationwide class members proximately caused by Defendant's acts.

50.     Plaintiffs and Nationwide class members have suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## [BAD FAITH DENIAL OF CONTRACT]

51.     Plaintiffs incorporate paragraphs 1 through 50 as though set forth herein.

52.     Defendant entered in Contracts with Plaintiffs and California subclass members for the purchase of the real properties that they were in contract to purchase, and admit that they were required to allow Plaintiffs and California subclass members to fund the purchase of the Properties if they "deposit[ed] all funds into escrow within 3 business days of <u>delivery</u> of this letter."

53.     Plaintiffs and California subclass members were ready, willing and able to deposit all funds into escrow within 3 business days of delivery of Defendant's default letters.

54.     Defendant refused to allow Plaintiffs and California subclass members to close escrow on the real properties and represented that they had no contractual obligation to allow Plaintiffs and California subclass members to purchase the real properties.

55.     Defendant thus denied of the existence of their Contracts with Plaintiffs and California subclass members in bad faith and without probable cause.

56.     Defendant's bad faith denial of the existence of a contract caused harm to Plaintiffs and California subclass members.

57. Plaintiffs and California subclass members have suffered damages in an amount to be proven at trial.

58. Defendant acted with malice and oppression and with a conscious disregard of Plaintiffs' and California subclass members' rights, making them liable for punitive damages under Civil Code § 3294.

## SIXTH CAUSE OF ACTION

### [VIOLATION OF THE "UNFAIR" PRONG OF THE UCL]

59. Plaintiffs incorporate paragraphs 1 through 58 as though set forth herein.

60. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

61. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

62. Defendant has violated the "unfair" prong of the UCL through its acts and omissions detailed herein, including the early termination or threat of early termination of purchase contracts.

63. The acts and practices alleged herein are unfair because they caused Plaintiffs, and reasonable consumers like them, to incur substantial financial loss.

64. The gravity of the harm to members of the California subclass resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged in unfair business practices within the meaning of California Business & Professions Code §§ 17200 *et seq.*

65. Through its unfair acts and practices, Defendant was improperly enriched by realizing greater profits from the sale of properties originally under contract for sale to Plaintiffs and California subclass members. As such, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all California subclass members, to otherwise disgorge all

profits unjustly obtained from Plaintiffs and California subclass members or from third party purchasers, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and California subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SEVENTH CAUSE OF ACTION

### [VIOLATION OF THE "FRAUDULENT" PRONG OF THE UCL]

66. Plaintiffs incorporate paragraphs 1 through 65 as though set forth herein.

67. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

68. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

69. Defendant deceived consumers into believing that their 3-day right to cure period would expire, and/or had expired, earlier than it actually did. Defendant's acts and practices as described herein deceived Plaintiffs and were highly likely to deceive members of the consuming public. Accordingly, Plaintiffs and California subclass members suffered monetary loss as a direct result of Defendant's practices described herein.

70. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed California subclass. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

71. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and California subclass members or from third party purchasers. As such, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all California subclass members and/or to otherwise disgorge all profits unjustly obtained from Plaintiffs and California subclass members or from third party purchasers, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future.

1 Otherwise, Plaintiffs and California subclass members may be irreparably harmed and/or denied 2 an effective and complete remedy if such an order is not granted.

### EIGHTH CAUSE OF ACTION

**[VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL]**

72. Plaintiffs incorporate paragraphs 1 through 71 as though set forth herein.

73. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

74. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

75. Defendant violated the unlawful prong by violating the California Consumer Legal Remedies Act, Civil Code section 1770(a)(9) ["Advertising goods or services with intent not to sell them as advertised."] and 1770(a)(14) ["Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."].

76. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed Nationwide class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

77. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and Nationwide class members or from third party purchasers. As such, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all Nationwide class members and/or to otherwise disgorge all profits unjustly obtained from Plaintiffs and Nationwide class members or from third party purchasers, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and Nationwide class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

78. Defendant entered in Contracts with Plaintiffs and other class members for the purchase of the real properties that they were in contract to purchase, and admit that they were

*Reallaw*

required to allow Plaintiffs and other class members to fund the purchase of the Properties if they "deposit[ed] all funds into escrow within 3 business days of <u>delivery</u> of this letter."

### PRAYER

Plaintiffs, on behalf of themselves and all other similarly situated Nationwide class members and/or California subclass members, pray for judgment as follows:

1. For judgment in favor of Plaintiffs and other class members and against Defendant in an amount to be proven at trial; for an award of punitive damages; for an award of costs of suit, including attorney fees; and for such other and further relief as the Court deems just and proper.

### CLASS CERTIFICATION

2. Plaintiffs request this case be certified as a nationwide and statewide class action;

3. Plaintiffs request they be appointed as Representatives of the class and subclass.

4. Plaintiffs request their attorneys be appointed as Counsel for the class and subclass.

### AS TO ALL CAUSES OF ACTION

5. Plaintiffs pray for judgment in favor of Plaintiffs and other class members and against Defendant in an amount to be proven at trial; for an award of punitive damages, where appropriate; for an award of costs of suit, including attorney fees, where appropriate; and for such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all the claims so triable.

DATED: April 12, 2019                REALLAW, APC

By: /s/ Michael J. Hassen
Michael J. Hassen
Attorneys for Plaintiffs AIIRAM LLC and
MARIIA KRAVCHUK, individually and on
behalf of all others similarly situated