UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIIRAM LLC, et al.,<br><br>                Plaintiffs,<br><br>      v.<br><br>KB HOME,<br><br>                Defendant. | Case No. 19-CV-00269-LHK<br><br>**ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>Re: Dkt. No. 21 |

Plaintiffs AIIRAM LLC and Mariia Kravchuk (collectively, "Plaintiffs") bring this putative class action lawsuit against Defendant KB Home ("Defendant") for breach of contract and related claims. Before the Court is Defendant's motion to stay the action or, in the alternative, to strike Plaintiffs' class allegations and dismiss seven of Plaintiffs' claims. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Defendant's motion to stay; DENIES Defendant's motion to strike Plaintiffs' class allegations; and GRANTS Defendant's motion to dismiss with leave to amend in part and without leave to amend in part.

I.      **BACKGROUND**

1

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

United States District Court
Northern District of California

### A. Factual Background

AIIRAM is a Nevada limited liability company. ECF No. 17 ("FAC"), ¶ 5. Kravchuk, an individual residing in Ukraine, is the sole owner of AIIRAM. *Id.* ¶ 4. Defendant is a Delaware corporation with its principal place of business in Los Angeles, California. *Id.* ¶ 6.

Plaintiffs allege that on or about July 26, 2017, Kravchuk and non-party Artem Koshkalda "electronically signed a Purchase Agreement and Escrow instructions with Defendant for Tract 10377, Lot/Unit 8, at 1035 Giacomo Lane #7, San Jose, California." *Id.* ¶ 15. Defendant executed the contract on or about August 3, 2017. *Id.* Kravchuk and Koshkalda agreed to pay $943,367 for Lot 8 and deposited $27,240 into escrow. *Id.*

On or about July 27, 2017, Koshkalda and non-party Vladimir Westbrook signed a purchase agreement and escrow instructions with Defendant for Lot 11 at Tract 10377. *Id.* ¶ 16. Defendant executed the contract on or about August 4, 2017. *Id.* Koshkalda and Westbrook agreed to pay $876,427 for Lot 11 and deposited $25,440 into escrow. *Id.*

On or about July 28, 2017, AIIRAM, through Kravchuk, signed a purchase agreement and escrow instructions with Defendant for Lot 14 at Tract 10377. *Id.* ¶ 17. Defendant executed the contract on August 3, 2017. *Id.* AIIRAM agreed to pay $932,028 for Lot 14 and deposited $27,240 into escrow. *Id.*

On November 9, 2017, Westbrook—who was the real estate agent for Plaintiffs and Koshkalda, as well as a purchaser of Lot 11—conducted a "pre-carpet" walkthrough of the homes at Lots 8, 11, and 14. *Id.* ¶ 18. On November 27, 2017, Westbrook conducted a final walkthrough of the homes at Lots 8, 11, and 14. *Id.* ¶ 20.

On November 27, 2017, Defendant emailed Koshkalda and stated that because November 30, 2017 was the close of Defendant's fiscal year, it was "imperative" that Plaintiffs and the other purchasers close escrow on Lots 8, 11, and 14 by that date. *Id.* ¶ 21. Defendant also informed Koshkalda that he would receive in the mail a "3 day default letter" stating that Koshkalda must close the purchase by November 30, 2017 or Defendant "will refund your deposit and cancel the purchase." *Id.*

2

On November 27, 2017, Defendant sent Kravchuck, via overnight delivery, a notice of default. *Id.* ¶ 22. The notice stated that under section 3.2 of the Lot 8 contract, Kravchuk could "continue with the purchase of your home if you are able to deposit all funds into escrow within 3 business days of <u>delivery</u> of this letter and you provide KB Home a copy of your final loan approval." *Id.* (emphasis in original).

On November 28, 2017, Kravchuk, Koshkalda, and Westbrook each assigned to AIIRAM the contractual rights to purchase Lots 8, 11, and 14. *Id.* ¶ 24.

Plaintiffs allege that Plaintiffs' loans were approved before November 30, 2017. *Id.* ¶ 25. On November 30, 2017, Kravchuk flew to California and met with the escrow officer to sign the final paperwork and to transfer the balance of the funds into escrow. *Id.* ¶ 26. However, the escrow officer informed Kravchuk that Defendant had canceled the contracts for Lots 8, 11, and 14. *Id.* ¶ 27. Later that same day, Defendant left a voicemail for Westbrook and said that Lots 8, 11, and 14 were available for "market prices." *Id.* ¶ 28. Plaintiffs allege that the market prices later listed for Lots 8, 11, and 14 far exceeded the prices Plaintiffs had agreed to pay. *Id.* ¶ 29.

### B. Procedural History

On June 11, 2018, Plaintiffs filed a lawsuit (the "Individual State Action") against Defendant in California Superior Court for the County of Santa Clara. ECF No. 23, Ex. B.[1] In the Individual State Action, Plaintiffs allege five causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional interference with economic advantage; (4) negligence [sic] interference with economic advantage; and (5) bad faith denial of contract. *Id.* at 1.

In the Individual State Action, Plaintiffs have filed at least three motions to compel

---

[1] Defendant filed a request for judicial notice in connection with its motion. ECF No. 23 ("RJN"). Defendant asks the Court to take judicial notice of 3 exhibits, including the pleadings and docket in the Individual State Action, as well as the original class action complaint in this case. RJN at 1. Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Further, Plaintiffs do not oppose Defendant's request for judicial notice. Thus, the Court GRANTS Defendant's request for judicial notice of Exhibits A, B, and C.

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

1  discovery from Defendant. *See* Ex. A at 2–4. The state court has also held at least two case

2  management conferences. *Id.* at 3, 10.

3       On December 17, 2018, Plaintiffs filed a putative class action complaint against Defendant

4  in California Superior Court for the County of Santa Clara. ECF No. 2-1. Plaintiffs' class action

5  complaint raised the same five claims as Plaintiffs' complaint in the Individual State Action: (1)

6  breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3)

7  intentional interference of economic advantage; (4) negligence [sic] interference with economic

8  advantage; and (5) bad faith denial of contract.

9       On January 16, 2019, Defendant removed Plaintiffs' putative class action ("Federal

10  Action") to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). ECF No.

11  1.

12       On February 14, 2019, in the Federal Action, the parties filed a stipulation to extend

13  Defendant's deadline to respond to Plaintiff's complaint. ECF No. 11. The parties stated that the

14  Federal Action is "related to a lawsuit pending in California state court, *Kravchuk et al. v. KB*

15  *Home*, Case No. 18CV329716" (the Individual State Action) and stated that the Individual State

16  Action "involves the same individual plaintiffs, same factual allegations, and same claims as this

17  lawsuit, and is identical to this lawsuit except for the fact that this lawsuit is a putative class action

18  and includes class allegations." *Id.* at 2.

19       On April 12, 2019, in the Federal Action, Plaintiffs filed the FAC. ECF No. 17. The FAC

20  includes eight claims: (1) breach of contract; (2) breach of the implied covenant of good faith and

21  fair dealing; (3) intentional interference of economic advantage; (4) negligence [sic] interference

22  of economic advantage; (5) bad faith denial of contract; (6) violation of the unfair prong of

23  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (7) violation of

24  the fraudulent prong of the UCL; and (8) violation of the unlawful prong of the UCL. FAC ¶¶ 30–

25  71.

26       Plaintiffs propose to certify the following class and subclass:

27

28  
4

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

**Nationwide Class**: All persons who entered into a contract with Defendant for the purchase of real property that contained a three-day "right to cure" provision, but whose contracts were terminated on less than three days' notice or who purchased the real property in question at a higher price than originally required under notice or threat that the contract would be terminated on less than three days' notice.

**California Subclass**: All persons who entered into a contract with Defendant for the purchase of real property located in the State of California that contained a three-day "right to cure" provision, but whose contracts were terminated on less than three days' notice or who purchased the real property in question at a higher price than originally required under notice or threat that the contract would be terminated on less than three days' notice.

*Id.* ¶ 10.

On April 24, 2019, Defendant filed the instant motion to stay the case or, in the alternative, to strike Plaintiffs' class allegations and dismiss seven of Plaintiffs' claims. ECF No. 21 ("Mot."). On May 8, 2019, Plaintiffs filed their opposition, ECF No. 25 ("Opp."), and on May 15, 2019, Defendant filed its reply. ECF No. 26 ("Reply").

## II.  LEGAL STANDARD

### A.  Motion to Stay

Under the *Colorado River* doctrine, a federal court may stay a case in favor of parallel state proceedings where doing so would serve the interests of "[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation omitted). A stay of proceedings pursuant to *Colorado River* is appropriate only in "exceptional circumstances," *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002), and if there is "substantial doubt as to whether the state court proceedings will resolve" all issues before the federal court, a stay or dismissal on *Colorado River* grounds is "preclude[d]," *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). The United States Supreme Court described the *Colorado River* doctrine as a narrow exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River*, 424 U.S. at 817.

### B.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**C. Rule 12(f) Motion to Strike**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule 12(f) motion to strike serves to "avoid the expenditure of time and money that must arise from

litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike . . . the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon,* 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012).

### D. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendant's instant motion requests several forms of relief. First, Defendant asks the Court to stay the Federal Action pending resolution of the Individual State Action. Second, Defendant asks the Court to strike Plaintiffs' class allegations. Third, Defendant asks the Court to dismiss seven of Plaintiffs' claims and Plaintiffs' request for punitive damages. The Court addresses each of Defendant's requests for relief in turn.

### A. Defendant's Motion to Stay the Federal Action Pending Resolution of the Individual State Action

Defendant asks the Court to stay the Federal Action under the *Colorado River* doctrine or pursuant to the Court's inherent authority to stay proceedings. As the Court explains below, neither doctrine merits granting Defendant's motion.

7

### 1. Stay Under *Colorado River*

The Court first discusses Defendant's request for a stay under *Colorado River*. The United States Supreme Court has held that a court should invoke the *Colorado River* doctrine to stay a case only in "exceptional circumstances." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). Accordingly, the Ninth Circuit has identified "eight factors for assessing the appropriateness of a *Colorado River* stay: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011) (footnote omitted).

However, the last factor can be dispositive. The United States Supreme Court has held that "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Cone*, 460 U.S. at 28. Accordingly, if there is "substantial doubt as to whether the state court proceedings will resolve" all issues before the federal court, a stay or dismissal on *Colorado River* grounds is precluded. *Intel Corp.*, 12 F.3d at 913. For example, in *Intel Corp.*, the Ninth Circuit concluded that a stay under *Colorado River* was inappropriate because there was "substantial doubt" that a state court proceeding on a challenge to an arbitration award would resolve the underlying copyright claims pending before the federal court. *Id.*; *see also Cone*, 460 U.S. at 26–27 (concluding that a *Colorado River* stay was not warranted because there was "substantial room for doubt" that the plaintiff could obtain its requested relief in state court).

One district court has addressed circumstances analogous to the instant case—with a putative class action in federal court involving the same parties as an individual action in state court—and concluded that a *Colorado River* stay was not merited. *Weitzner v. Sanofi Pasteur,*

8

*Inc.*, 2012 WL 1677340 (M.D. Pa. May 14, 2012). In *Weitzner*, the plaintiff filed a putative class action in federal court for TCPA violations. *Id.* at *1. The plaintiff also had a pending individual state court action against the same defendants. *Id.* at *2. The *Weitzner* court explained that *Colorado River* "is generally appropriate where identical class actions are proceeding simultaneously in the state and federal courts." *Id.* at *5 (citing *Trent v. Dial Med. of Florida, Inc.*, 33 F.3d 217, 223 (3d Cir. 1994), *superseded by statute on other grounds as recognized in Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274 (3d Cir. 2017)). However, those principles were inapplicable in *Weitzner* because the individual plaintiff in the state court action and the proposed federal class were "substantially incongruent." *Id.* at *5. Although the *Weitzner* court recognized that the analysis might change "if the putative class is ultimately not certified as that would more closely align the identity of the parties in the two actions," the court declined to stay proceedings at that early stage of the litigation. *Id.*; *see also Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 572–73 (S.D.N.Y. 2012) (declining to grant *Colorado River* stay based on existence of two putative class actions by different plaintiffs against the same defendant because without overlapping certified classes, there was nothing "potentially duplicative" about the two cases).

In the instant case, the Court questions why Plaintiffs, represented by the same attorney, chose to file a separate putative class action lawsuit premised on the same facts against the same defendant rather than to amend the Individual State Action to add class allegations. Nonetheless, the Court finds the analysis in *Weitzner* persuasive, and concludes that this is not the "exceedingly rare" case meriting a *Colorado River* stay. *Smith v. Central Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (holding that a court should stay or dismiss a case pending concurrent state court proceedings only in "exceedingly rare" circumstances). In addition, this Court only obtained jurisdiction over the Federal Action because *Defendant* removed the case to federal court, and thus the instant situation involving concurrent federal and state proceedings is a situation of Defendant's own making.

Primarily, the Court has "substantial doubt" that the Individual State Action will resolve

United States District Court
Northern District of California

the Federal Action, which precludes a stay under *Colorado River*. *See Intel Corp.*, 12 F.3d at 913. As in *Weitzner*, Plaintiffs in the Federal Action proceed on behalf of a putative class of home purchasers, whereas in the Individual State Action, Plaintiffs proceed only on their own behalf. Thus, the Federal Action presents the distinct question of whether class certification is warranted under Federal Rule of Civil Procedure 23, which the Court may have to decide regardless of the outcome of the Individual State Action. Accordingly, the Individual State Action does not provide "an adequate vehicle for the *complete* and prompt resolution of the issues between the parties." *Cone*, 460 U.S. at 28 (emphasis added).

Defendant argues that the Individual State Action will necessarily resolve the Federal Action because (1) if Plaintiffs prevail in the Individual State Action, Plaintiffs will lack standing to proceed in the Federal Action; and (2) if Plaintiffs do not prevail in the Individual State Action, Plaintiffs' class claims will be precluded. However, in either case, Plaintiffs could move to substitute a new class representative. Thus, neither resolution of the Individual State Action would resolve the Federal Action question of whether a *class* of purchasers is entitled to seek relief from Defendant. *See also Owen v. Labor Ready Inc.*, 146 F. App'x 139, 140 (9th Cir. 2005) (holding that district court abused its discretion in granting *Colorado River* stay of a putative class action in light of a concurrent state court action against the same defendant).

Therefore, because the Court has a substantial doubt that the Individual State Action will resolve the Federal Action, the Court need not consider the other *Colorado River* factors. *Intel Corp.*, 12 F.3d at 913 n.7 (declining to weigh other factors after concluding that there was a substantial doubt that the state proceeding would completely resolve the federal case). The Court DENIES Defendant's request for a stay under *Colorado River*.

### 2. Stay Pursuant to Court's Inherent Power

Defendant also asks the Court to stay the case pursuant to the Court's inherent power. Under the United States Supreme Court's *Landis* decision, a federal court has "discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Although the Ninth Circuit has not spoken to the precise question, other circuits have held that *Landis* does not provide an alternative basis for a court to stay a case when a *Colorado River* stay is not merited. Granting a stay under the broader *Landis* test in such circumstances would undermine the narrow *Colorado River* doctrine and its instruction for courts to exercise their "virtually unflagging obligation" to exercise jurisdiction: "To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court." *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013). The Seventh Circuit has also held that "the pendency of a parallel state court suit" is not a sufficient basis for a federal court to stay a case, and that *Colorado River* instead supplies the applicable test. *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982).

As one district court framed the question, "the *Colorado River* doctrine is best understood as an additional limitation on a court's inherent authority to grant a stay discussed in the *Landis* decision." *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 486 n.8 (N.D. Tex. 2016); *see also Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92–93 (2d Cir. 2013) (holding that only *Colorado River* "sets out the appropriate standards under which to examine whether or not to dismiss (or stay) [the plaintiff's] allegedly duplicative federal claims").

The Ninth Circuit's *Colorado River* decisions express a similar view. For example, in *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154 (9th Cir. 2012), the Ninth Circuit discussed the legal standards applicable to whether "[a] district court may, in its discretion, stay or dismiss a federal case in favor of related state proceedings." *Id.* at 1158. The Ninth Circuit held that a court may stay a federal case in favor of related state proceedings where (1) the plaintiff seeks only declaratory relief pursuant to *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) (which is not applicable to this case, in which Plaintiffs seek more than declaratory relief); or (2)

11

ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

when "exceptional circumstances" exist under *Colorado River*. *Id.* The Ninth Circuit did not indicate that the broader *Landis* factors also apply to the specific circumstance of whether to stay a case in favor of related state proceedings. Moreover, in an earlier *Colorado River* case, the Ninth Circuit held that "[i]n abstention cases, discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir. 1990). Accordingly, nothing in Ninth Circuit precedent indicates that *Landis* supplies an alternative to the *Colorado River* doctrine, and the Court concludes that the *Landis* analysis is inapplicable to the instant case. *See Martin v. Minuteman Press Int'l, Inc.*, 2016 WL 4524885, at *2 (E.D. Cal. Aug. 30, 2016) (holding that *Colorado River* rather than *Landis* is the applicable doctrine in a case involving concurrent federal and state jurisdiction over parallel cases).

Defendant cites a lone district court case in this circuit in which the district court applied both *Colorado River* and *Landis*, but the district court in that case did not explain why *Landis* supplies an alternative means to stay a case when *Colorado River* does not. *United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, 2018 WL 5291992 (N.D. Cal. Oct. 23, 2018). Moreover, unlike the instant case, *Bani* did not involve parallel federal and state actions, but rather an insurance coverage action in federal court and an underlying state court action that was the subject of the coverage dispute. *Id.* at *3.

In light of the persuasive reasoning of other circuits that *Landis* does not provide an alternative basis for a stay and in light of United States Supreme Court and Ninth Circuit precedent emphasizing the "exceedingly narrow" bounds of the *Colorado River* doctrine, the Court concludes that *Landis* does not provides an alternative to a *Colorado River* stay. Therefore, the Court DENIES Defendant's request for a stay under *Landis*.

### B. Defendant's Motion to Strike Class Allegations is Premature

Second, Defendant moves to strike Plaintiffs' class allegations. Defendant contends that Plaintiffs' pursuit of the Individual State Action conflicts with Plaintiffs' ability to serve as class

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

representatives in the Federal Action.  As an initial matter, Defendant's motion to strike the class allegations because Plaintiffs' counsel is attempting to represent "different plaintiffs," Reply at 5, is in some tension with Defendant's simultaneous argument for *Colorado River* purposes that the Individual State Action and Federal Action involve the "same Plaintiffs." *Id.* at 1.  Furthermore, on its merits, Defendant's argument to strike Plaintiffs' class allegations lacks merit.  Whether Plaintiffs are adequate class representatives under Federal Rule of Civil Procedure 23(a) or whether Plaintiffs' attorney is suitable class counsel under Rule 23 are questions reserved for a motion for class certification.

The rare instances in which courts have struck class allegations at the pleading stage involve sharply different circumstances than those in the instant case, and did not address at the pleading stage whether the plaintiffs satisfied Rule 23.  For example, a district court struck class allegations when the plaintiffs' proposed class period was "facially invalid" due to the applicable statute of limitations.  *Ramirez v. Baxter Credit Union*, 2017 WL 1064991, at *8 (N.D. Cal. Mar. 21, 2017).  In *Montoya v. Creditors Interchangeable Receivable Management*, 2011 WL 971341 (C.D. Cal. Mar. 16, 2011), the district court struck the plaintiff's class allegations at the pleading stage only because the plaintiff failed to file a motion for class certification within 90 days of service under the Central District of California's local rules.[2]  *Montoya* said nothing about whether a court can resolve the Rule 23(a) questions of Plaintiffs' adequacy and putative class counsel's adequacy at the pleading stage.  To the contrary, the Ninth Circuit has held that "[a] plaintiff seeking class certification bears the burden of affirmatively demonstrating through evidentiary proof that the class meets the prerequisites of Rule 23(a)."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1003–04 (9th Cir. 2018) (citation and internal quotation marks omitted).

Defendant cites no authority holding that despite *Sali*, a court can strike class allegations at the pleading stage for failure to satisfy the prerequisites of Rule 23(a).  In fact, Defendant's own

---

[2] The Ninth Circuit later held that the Central District of California's 90-day deadline is incompatible with Rule 23.  *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018).

13

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

authorities demonstrate that whether a plaintiff is an adequate class representative and an attorney suitable class counsel are fact-specific questions not suited for resolution at the pleading stage. For example, a leading class action treatise counsels only that the existence of other pending litigation between a class plaintiff and class defendant "*may* present a disabling conflict" because the other litigation "create[s] the *possibility* that the plaintiff will use the class suit as leverage to secure personal advantage in other actions." 1 McLaughlin on Class Actions § 4.31 (15th ed. 2018) (emphases added).

As a result, the district court cases holding that a "potential conflict of interest" can render a class representative inadequate or class counsel inappropriate were all decided on motions for class certification, not motions to strike or dismiss. *See, e.g.*, *Wilson v. Conair Corp.*, 2016 WL 7742772, at *4 (E.D. Cal. June 3, 2016) (holding on class certification that a plaintiff was an inadequate class representative due to potential conflicts); *Lou v. Ma Laboratories, Inc.*, 2014 WL 68605, at *2 (N.D. Cal. Jan. 8, 2014) (holding on class certification that class counsel was inappropriate because of an "intensified" risk that counsel representing two sets of plaintiffs could compromise one set of claims). Although Plaintiffs may well be inadequate class representatives and Plaintiffs' attorney inadequate class counsel, Defendant identifies no case in which a court has so concluded at the pleading stage. The Court must test whether Plaintiffs satisfy Rule 23 against "evidentiary proof." *Sali*, 909 F.3d at 1004; *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1046–47 (N.D. Cal. 2014) (declining to consider whether to disqualify class counsel prior to class certification). In light of the above authorities, the Court DENIES Defendant's motion to strike Plaintiffs' class allegations at the pleading stage.

## C. Defendant's Motion to Dismiss

Lastly, Defendant moves to dismiss Plaintiffs' second through eighth claims as duplicative of Plaintiffs' first claim, which is for breach of contract. Defendant also moves to dismiss Plaintiffs' prayer for punitive damages. The Court addresses Defendant's arguments in turn.

### 1. Breach of the Implied Covenant of Good Faith and Fair Dealing

14

1   Plaintiffs' second claim is for breach of the implied covenant of good faith and fair

2   dealing. FAC ¶¶ 35–43. Plaintiffs allege that Defendant violated the implied covenant of good

3   faith and fair dealing because Defendant "refus[ed] to allow Plaintiffs and California subclass

4   members to close escrow for the purchase of the real properties within 3 business days of the

5   delivery of the 3-day default letters, as required by the Contracts." *Id.* ¶ 39. Defendant contends

6   that the Court must dismiss Plaintiffs' implied covenant claim as duplicative of Plaintiffs' breach

7   of contract claim. The Court agrees.

8   Where the "claim of breach of the implied covenant relies on the same acts, and seeks the

9   same damages, as [the plaintiff's] claim for breach of contract," a court can dismiss the claim for

10  breach of the implied covenant of good faith and fair dealing as duplicative. *Bionghi v. Metro.*

11  *Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999); *see also Alvarez v. Chevron Corp.*,

12  656 F.3d 925, 931 n.6 (9th Cir. 2011) (holding that claim for breach of the implied covenant of

13  good faith and fair dealing fails as "duplicative of Plaintiffs' breach of contract claim").

14  Although Plaintiffs argue that their implied covenant claim sounds in tort and is not

15  duplicative, the claim clearly relies on the same factual allegations as Plaintiffs' breach of contract

16  claim. In their breach of contract claim, Plaintiffs allege that "Defendant breached the contracts

17  by refusing to allow Plaintiffs and Nationwide class members to close escrow on the purchase of

18  the real properties within 3 business days of delivery of Defendant's 3-day default letters." FAC ¶

19  33. Plaintiffs' claim for breach of the implied covenant is almost word-for-word identical, as

20  Plaintiffs allege that "Defendant breached the implied covenant of good faith and fair dealing by

21  refusing to allow Plaintiffs and California subclass members to close escrow for the purchase of

22  the real properties within 3 business days of the delivery of the 3-day default letters, as required by

23  the Contracts." *Id.* ¶ 39. Thus, Plaintiffs' implied covenant claim depends on precisely the same

24  facts—Defendant's alleged breach of the 3-day default provision—as Plaintiffs' breach of contract

25  claim. Under *Alvarez*, dismissal of Plaintiffs' claim for breach of the implied covenant of good

26  faith and fair dealing is warranted. 656 F.3d at 931 n.6.

27

28

15

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## 2. Negligent and Intentional Interference with Economic Advantage

Plaintiffs' third claim is for intentional interference with economic advantage and Plaintiffs' fourth claim is for negligent interference with economic advantage. FAC ¶¶ 44–50. In both claims, Plaintiffs allege that Plaintiffs "had economic interests in the real properties that they were in contract to purchase" and that those interests "had the probability of future economic benefit to Plaintiffs and Nationwide class members." *Id.* ¶¶ 45, 49.

To state a claim for intentional interference with economic advantage, a plaintiff must allege: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). To state a claim for negligent interference with economic advantage, the elements are identical, save that a plaintiff must allege that the defendant failed to act with reasonable care rather than with intent to disrupt the economic relationship. *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005–06 (2018).

Defendant argues that Plaintiffs cannot state claims for interference with economic advantage because Plaintiffs fail to allege an economic relationship with a third party. Rather, Plaintiffs allege only that Plaintiffs had an economic relationship with Defendant. Indeed, the California Supreme Court has held that "the tort cause of action for interference with contract does not lie against a party to the contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.

United States District Court
Northern District of California

4th 503, 514 (1994); *see also Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1031 (N.D. Cal. 2016) (holding that a claim for interference with interference claim cannot be brought against a party to the contract).

In the instant case, Plaintiffs' pleading identifies no contractual relationship between Plaintiffs and a third party. Plaintiffs only generally allege that Plaintiffs' economic interests "had the probability of future economic benefit" to Plaintiffs. FAC ¶¶ 49, 52. Although Plaintiffs argue in their opposition that Defendant interfered with Plaintiffs' "sale of the homes to third parties," Opp. at 15, the complaint includes no allegation that Plaintiffs entered into any sale agreements with third parties—nor even an allegation that Plaintiffs planned to enter any such agreements. *See SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012) (dismissing claim for interference with economic advantage where the plaintiff "ha[d] not identified any specific customer relationship" with which the defendant interfered). Therefore, without allegations of an economic relationship between Plaintiffs and a specific third party, Plaintiffs' complaint fails to state claims for intentional or negligent interference with economic advantage. Plaintiffs' conclusory allegations that Plaintiffs expected "future economic benefit," without identification of any third party or any economic relationship with such third party, are insufficient.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' third and fourth claims for intentional and negligent interference with economic advantage. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 3. Bad Faith Denial of Contract

Plaintiffs' fifth claim is for bad faith denial of contract. FAC ¶¶ 51–58. Plaintiffs allege that "Defendant refused to allow Plaintiffs and California subclass members to close escrow on the real properties and represented that they had no contractual obligation to allow Plaintiffs and

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

California subclass members to purchase the real properties" and that Defendant thus denied "the existence of their Contracts with Plaintiffs and California subclass members in bad faith and without probable cause." *Id.* ¶¶ 54–55.

However, California does not recognize a cause of action for bad faith denial of contract. In *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85 (1995), the California Supreme Court overruled its prior precedent and held that California law does not permit a cause of action for bad faith denial of contract. *Id.* at 102. To recover in tort for a breach of contract, Plaintiffs must allege that Defendant violated an independent tort duty "*other* than the bad faith denial of the existence of, or liability under, the breached contract." *Id.* (emphasis added); *see also WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 WL 824297, at *5 (N.D. Cal. Feb. 28, 2014) (explaining that "California law generally precludes tort recovery for non-insurance bad faith claims in the absence of a violation of an independent duty arising from tort law principles").

In the instant case, Plaintiffs allege that Defendant "represented that they had no contractual obligation" and that Defendant "denied the existence of their Contracts with Plaintiffs and California subclass members in bad faith and without probable cause." FAC ¶¶ 54–55. Thus, Plaintiffs allege only that Defendant denied the existence of the purchase contracts in bad faith, not that Defendant owed or violated any other independent tort duty.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' fifth claim for bad faith denial of contract. Because the California Supreme Court has held that as a matter of law, California does not recognize a cause of action for bad faith denial of the contract, the Court finds that granting Plaintiff an additional opportunity to amend the complaint would be futile and denies leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 4. Claims for Violation of California's UCL

Plaintiffs' sixth, seventh, and eight claims are for violations of California's UCL. FAC ¶¶ 59–78. The UCL permits recovery under three separate prongs, each of which "is a separate and distinct theory of liability." *Lozano v. AT &T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.

2007). Plaintiffs bring claims under all three prongs: the fraudulent prong, unfair prong, and unlawful prong.

Defendant contends that all three of Plaintiffs' UCL claims fail as duplicative of Plaintiffs' breach of contract claim. The Ninth Circuit has held that factual allegations that a defendant breached a contract support a claim under any prong of the UCL only if the "breaches of contract are independently unlawful, unfair, or fraudulent." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). A plaintiff's allegation that a defendant merely breached the contract between plaintiff and defendant is insufficient to state a UCL claim under any prong. *Id.*; *see Unique Functional Prods., Inc. v. JCA Corp.*, 2012 WL 367245, at *5 (S.D. Cal. Feb. 3, 2012) ("Were the court to rule that a simple breach of contract could form the basis for a [UCL] claim, then virtually every contract action could be converted into a business tort."). Although Plaintiffs contend that Plaintiffs have adequately alleged independently unlawful, unfair, and fraudulent conduct, the Court disagrees.

In their unfair prong claim, Plaintiffs allege that "Defendant has violated the 'unfair' prong of the UCL through its acts and omissions detailed herein, including the early termination or threat of early termination of purchase contracts." FAC ¶ 62. "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). However, Plaintiffs' unfair prong claim is predicated only on Defendant's alleged breach of the 3-day default provision via Defendant's "early termination" of the purchase agreements. *See* FAC ¶ 62. Plaintiffs' FAC includes no allegations of conduct that is independently unfair. *See Sybersound*, 517 F.3d at 1152. Thus, Plaintiffs' FAC fails to state a claim for violation of the UCL's unfair prong.

Next, in their fraudulent prong claim, Plaintiffs allege that "Defendant deceived consumers into believing that their 3-day right to cure period would expire, and/or had expired, earlier than it actually did." FAC ¶ 69. To state a claim under the fraudulent prong of the UCL, Plaintiffs must

19

allege "actual reliance on the allegedly deceptive or misleading statements," *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011), and that "the misrepresentation was an immediate cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

In the instant case, Plaintiffs allege that Defendant's allegedly misleading statement was Defendant's statement that Plaintiffs' 3-day right-to-cure period expired on November 30, 2017. FAC ¶ 69. However, to the extent that Plaintiffs allege Defendant's statement was false, that allegation is coextensive with Plaintiffs' allegation that Defendant's November 30, 2017 cancellation of the purchase contracts breached the 3-day default provision. Plaintiffs do not allege that Defendant committed any fraudulent conduct other than allegedly breaching the contract by terminating the purchase agreements early. *See Sybersound*, 517 F.3d at 1152. Moreover, Plaintiffs do not allege that Plaintiffs at all relied on Defendant's statement that the 3-day right-to-cure period expired on November 30, 2017. In fact, Plaintiffs disputed the truth of Defendant's statement and sued Defendant for breach of contract. Thus, Plaintiffs' FAC fails to state a claim for violation of the UCL's fraudulent prong.

Finally, Plaintiffs' unlawful prong claim relies on an alleged violation of California's Consumer Legal Remedies Act ("CLRA"). FAC ¶ 75. The UCL's unlawful prong allows a plaintiff to recover for predicate violations of other laws. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). However, the CLRA is inapplicable to "transactions resulting in the sale of real property." *McKell*, 142 Cal. App. 4th at 1488; *see* Cal. Civ. Code § 1754(a) (explaining that the CLRA "shall not apply to any transaction which provides for . . . the sale of a lot or parcel of real property"). Furthermore, a "common law violation such as breach of contract" is an insufficient predicate for the UCL's unlawful prong. *Shroyer*, 622 F.3d at 1044. Thus, Plaintiffs' FAC fails to state a claim for violation of the UCL's unlawful prong.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' sixth, seventh, and eighth claims for violation of the UCL. Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and

20

1  Plaintiffs have not acted in bad faith, the Court grants leave to amend.  *See Leadsinger, Inc.*, 512

2  F.3d at 532.

3      **5.  Prayer for Punitive Damages**

4      Defendant moves to dismiss Plaintiffs' prayer for punitive damages.  *See* FAC at 15.

5  Defendant contends that punitive damages are unavailable for Plaintiffs' only remaining claim,

6  breach of contract.  Indeed, the California courts have stated that "[i]t is well settled in this state

7  that punitive damages may not be awarded in an action based on breach of contract, even though

8  the defendant's breach was willful or fraudulent."  *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d

9  990, 999 (1977); *see also* Cal. Civ. Code § 3924(a) (explaining that punitive damages are

10  available only "for the breach of an obligation *not arising from contract*") (emphasis added).

11  Thus, because the Court has dismissed all of Plaintiffs' claims except for the claim for breach of

12  contract, Plaintiffs cannot recover punitive damages.

13      Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' prayer for punitive

14  damages.  Because granting Plaintiffs an additional opportunity to amend the complaint would not

15  be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiffs have not acted in bad

16  faith, the Court grants leave to amend.  *See Leadsinger, Inc.*, 512 F.3d at 532.

**IV.  CONCLUSION**

18      For the foregoing reasons, the Court DENIES Defendant's motion to stay and DENIES

19  Defendant's motion to strike class allegations.  The Court GRANTS Defendant's motion to

20  dismiss the following claims with leave to amend: breach of the implied covenant of good faith

21  and fair dealing, negligent interference with economic advantage, intentional interference with

22  economic advantage, and violation of California's UCL.  The Court GRANTS Defendant's

23  motion to dismiss Plaintiff's bad faith denial of contract claim without leave to amend.  The Court

24  GRANTS Defendant's motion to dismiss Plaintiff's prayer for punitive damages with leave to

25  amend.

26      Should Plaintiffs elect to file an amended complaint, Plaintiffs shall do so within thirty

days of this order.  Failure to file an amended complaint within 30 days will result in dismissal of the deficient claims with prejudice.  Failure to cure the deficiencies identified in this order or in Defendant's motion to dismiss will result in dismissal with prejudice of the deficient claims. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated:  August 12, 2019

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 19-CV-00269-LHK
ORDER DENYING MOTION TO STAY AND MOTION TO STRIKE CLASS ALLEGATIONS; GRANTING
MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART

United States District Court
Northern District of California